44 P.3d 22 (2002)
2002 WY 51
Daniel R. TRUJILLO, Appellant (Defendant),
v.
The STATE of Wyoming, Appellee (Plaintiff).
No. 00-266.
Supreme Court of Wyoming.
April 9, 2002.
*23 Kenneth M. Koski, Public Defender; Donna Domonkos, Appellate Counsel; and Carrol S. Nelson, Representing Appellant.
Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia Tibbetts, Senior Assistant Attorney General; Devon O'Connell Coleman, Acting Faculty Director, Prosecution Assistance Program; and Tammy L. Farmer, Student Intern., Representing Appellee.
Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.
LEHMAN, Chief Justice.
[¶ 1] Appellant Daniel Trujillo was convicted of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) (LexisNexis 2001). Trujillo seeks reversal of his conviction, claiming prosecutorial misconduct during closing argument. We agree that certain statements made by the prosecutor in closing were improper; however, Trujillo has not demonstrated that the improper remarks rose to the level of plain error which would warrant reversal. Accordingly, the Judgment and Sentence is affirmed.

ISSUES
[¶ 2] Trujillo presents a single issue for review:
Prosecutorial misconduct occurred, denying Appellant a fair trial, when the prosecutor made improper comments and appeals in closing argument with no curative instruction from the trial court.
The State rephrases the issue in this way:
Was Appellant denied a fair trial by the statements made by the prosecutor during closing arguments?

FACTS
[¶ 3] On April 28, 2000, Daniel Trujillo was convicted in Sweetwater County of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii)[1] following a four-day jury trial. The evidence the State presented at trial through witness testimony and exhibits indicated that on September 14, 1999, Trujillo found his former girlfriend, Karen Gallegos, in the bedroom of another man, Guillermo "Memo" Barrera. Apparently enraged at discovering Ms. Gallegos asleep in Barrera's bed, Trujillo grabbed her by the hair and then dragged her through the apartment and up a flight of stairs onto a grassy area near the apartment complex. Once outside, while ignoring her pleas to stop, Trujillo repeatedly kicked the minimally clad Ms. Gallegos in the head and ribs with his shoes. Trujillo finally ceased the beating after a neighbor yelled at him to stop and approaching police sirens could be heard. Ms. Gallegos suffered multiple cuts and bruises, black eyes, a perforated eardrum and a basilar skull fracture as a result of Trujillo's kicks. Police interviewed Trujillo, the victim Ms. Gallegos, and various other witnesses at the scene. Trujillo was not arrested that evening, but was charged thereafter by the Sweetwater County Attorney's Office with assault and battery with a deadly weapon, the weapon being his shoes. On June 12, 2000, following his jury conviction, the district court entered its judgment and sentence sentencing Trujillo to seven to ten years in the Wyoming State Penitentiary. This timely appeal followed asserting the prosecutor made impermissible statements during his closing argument which denied appellant a fair trial.

STANDARD OF REVIEW
[¶ 4] Trujillo made no objection to the prosecutor's closing argument. The general rule in Wyoming is that a failure to interpose a timely objection to improper argument is treated as a waiver, unless the prosecutor's misconduct is so flagrant as to *24 constitute plain error, requiring reversal. Montoya v. State, 971 P.2d 134, 136 (Wyo. 1998); Armstrong v. State, 826 P.2d 1106, 1115 (Wyo.1992). A plain error analysis requires the appellant to demonstrate the violation of a clear and unequivocal rule of law, clearly reflected in the record, resulting in the abridgment of a substantial right of the party to his material prejudice. Arevalo v. State, 939 P.2d 228, 232 (Wyo.1997). We are reluctant to find plain error in closing arguments "lest the trial court becomes required to control argument because opposing counsel does not object." James v. State, 888 P.2d 200, 207 (Wyo.1994) (quoting Taul v. State, 862 P.2d 649, 659 (Wyo.1993)).

DISCUSSION
[¶ 5] In analyzing claims of prosecutorial misconduct, we consider the prosecutor's argument in the context in which it was made and with regard to the evidence produced at trial. Taul, 862 P.2d at 659. Over the years, on innumerable occasions when deciding this issue, this court has approved various portions of the ABA Standards for Criminal Justice sections entitled "Argument to the Jury." Section 3-5.8 pertains to the Prosecution Function and § 4-7.8 to its companion Defense Function. See e.g. Browder v. State, 639 P.2d 889, 893 (Wyo.1982); Harper v. State, 970 P.2d 400, 403 (Wyo.1998); Montoya v. State, 971 P.2d at 136; Mazurek v. State, 10 P.3d 531, 542 (Wyo.2000). The Commentary to § 3-5.8 (footnotes omitted) concludes:
The prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct. Prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with the prosecutor's office but also because of the fact-finding facilities presumably available to the office. Unfortunately, some prosecutors have permitted an excess of zeal for conviction or a fancy for exaggerated rhetoric to carry them beyond the permissible limits of argument. Of course, a prosecutor must be free to present arguments with logical force and vigor. As the Supreme Court has remarked, however, "while he may strike hard blows, he is not at liberty to strike foul ones." To attempt to spell out in detail what can and cannot be said in argument is impossible, since it will depend largely on the facts of each case. Nevertheless, certain broad guidelines based on the function of argument and the experience of courts in typical situations can be established.
We herein set out in toto the applicable Standards that generally delineate the appropriate limits of a prosecutor's arguments to a jury in the state of Wyoming. We again urge all prosecutors, defense counsel, and trial courts to become more familiar with the Standards and accompanying Commentary as well as this court's abundant precedent on the subject and govern their conduct at trial accordingly.[2]
(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *25 (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.
[¶ 6] With specific regard to subsection (e), this is the view adopted by the United States Supreme Court. The Court, in reviewing a prosecutor's remarks for plain error as a consequence of defense counsel's failure to object at trial, stated, "[w]e emphasize that the trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; `the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.'" United States v. Young, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043-44, 84 L.Ed.2d 1 (1985) (quoting Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)). While accepting subsection (e) as an ultimate statement of legal fact, this court continues to believe that:
The first responsibility for the deterrence of contended improper conduct by the prosecution belongs to appellant's trial counsel. The prompt objection to misconduct allows the trial court to weigh the impact of the comments and assess curative measures. These measures occupy a varied range including: simply sustaining the objection; sustaining the objection and admonishing or instructing the jury to ignore the comments; or, for the most flagrant abuse, ordering a mistrial or a directed verdict for the defendant where proper objections were made.
The trial counsel initiates the curative process with the decision to object. However, trial counsel, acting as a zealous advocate for his client, may make a tactical decision not to object perhaps from the belief that drawing attention to the prosecutor's comments lends credibility or perhaps because in trial counsel's estimation, the jury has not been swayed by the comment. The fact that such routine strategic decisions are made during the course of a trial supports the well-reasoned rule that failure to object is considered a waiver.
Dice v. State, 825 P.2d 379, 384 (Wyo.1992) (citations omitted).
[¶ 7] Having herein outlined the general law to be applied, we now turn to the specific remarks complained of to determine whether they rise to the level of plain error. The prosecutor began his closing argument by stating:
Ladies and gentlemen of the jury, you don't even see this on t.v. You don't see this in the movies. Think for a minute. Has anyone ever seen a t.v. show where a man grabbed a woman by the hair and took her down the hall, up the stairs by her hair and threw her down on the ground and kicked her in the face repeatedly? There's [sic] outcries all over the place in this country about the media and how they're showing too much violence, they show shootings, they show punching, but they don't show men kicking women in the head.
[¶ 8] Appellant characterizes this argument as an improper appeal to the jury's passions and prejudices citing Armstrong v. State, 826 P.2d at 1116, and Hopkinson v. State, 632 P.2d 79, 145 (Wyo.1981). It has been stated often by this court that: "The question of the propriety of a given statement is not one that can be decided by reference to a judicial checklist of improper words or prohibited phrases to determine if error is present. Of necessity, each statement must be considered in the context in which it was made and in the context of the evidence produced at trial." Barela v. State, 787 P.2d 82, 83 (Wyo.1990). Essentially, the prosecutor's remarks are a reasonable summation of the evidence adduced at trial and thus were not improper.
[¶ 9] Next, appellant alleges that the prosecutor's final remarks made during his rebuttal argument constituted an improper "send a message" type appeal to the jury urging them to "remedy society's woes" by convicting the defendant. This court has explicitly disapproved such arguments finding "[t]he fear in allowing such appeals is *26 that the accused will be convicted for reasons wholly irrelevant to her guilt or innocence." Gayler v. State, 957 P.2d 855, 861 (Wyo.1998) (citing United States v. Monaghan, 741 F.2d 1434, 1441 (D.C.Cir.1984), cert. denied 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985)). "Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." 957 P.2d at 861 (quoting Monaghan, 741 F.2d at 1441). Similarly, "send a message" arguments by prosecutors to juries are universally condemned. The Mississippi Supreme Court in Williams v. State, 522 So.2d 201 (Miss.1988) simply yet colorfully explained the problem with these arguments:
The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.
Id. at 209 (emphasis added).
[¶ 10] In the instant case, the prosecutor's pertinent remarks follow, with the statements specifically alleged as error by appellant emphasized:
So as I end up, I'll give you a few categories here. You've got wrongs, you've got evils, and you've got crimes, and every day, thousands of each are inflicted on people. Now, there are wrongs that are not evil, and there are evils that are not wrongs. There are wrongs that are not crimes, there are evils that are not crimes, so what we're here for is the latter; the crime. But see, the jury decides whether it's a felony or a misdemeanor. That's why we all stand up when you come in the room. It's all up to you.
In a few minutes, you're going to go into the jury room, and it's all up to you, and nobody's going to ask how you came to your conclusion, nobody's going to question you. Once we sit down and you go in that room, it's you who decides whether this was battery or an aggagg assault is what we call it. I'm not asking youthe State is not asking you to find that this man is evil or that he's always a wrong doer or that he commits a lot of crimes. That's not the point here. What we're talking about is the act he committed on that date, and we would submit to you that the act that he committed on that day was wrong, and it was evil, and finally, it was a crime.
All right. Talked about the declaration, talked about equal justice in the law, and after that, when we were in a civil war, President Lincoln said all that is required for evil to triumph is for good men to stand by and do nothing.[3]Times have changed, haven't they? All that is required for evil to triumph is for good men to stand by and do nothing. Please. Do something about this. Do something.

[¶ 11] As presented, the prosecutor did not explicitly ask the jury to "send a message." His comments taken as a whole can probably more accurately be described as a rhetorical device. Nevertheless, to the extent that they can be construed to make a prediction of the consequences of the jury's verdict, ABA Standard on Criminal Justice 3-5.8(d), they are inappropriate. However, we cannot say that when reviewed under the plain error standard, as required by the lack of contemporaneous objection, the appellant has demonstrated the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way.
*27 [¶ 12] Appellant next asserts that prosecutorial misconduct arose from the following statements made when the prosecutor was attempting to explain the concept of "bodily injury" to the jury:
"Bodily injury" means physical pain or impairment of any physical condition. Look at the pictures and think in your mind, if somebody kicked me in the face twice, would it hurt? Would it hurt?
[¶ 13] Appellant argues this statement is impermissibly inflammatory because the prosecutor was attempting to place the jurors in the shoes of the victim. This court has disapproved this tactic as inflammatory finding that asking the jury to place themselves in the position of the victim injects into the minds of the jurors issues which are broader than the question of the defendant's guilt or innocence. Jeschke v. State, 642 P.2d 1298, 1302 (Wyo.1982). However, again we do not find that the quoted remarks fit that mold sufficiently such as to transgress the rule in a clear and obvious, not merely arguable, way and thus do not rise to the level of plain error.
[¶ 14] Lastly, appellant complains of the following closing comments by the prosecutor:
Well, finally, I guess the most disturbing defense argument was she deserved it. She deserved it. She shouldn't have been at Memo's. Does anyone deserve this? Is there any human being that should be treated like this? He just went there to help. Just went there to get her out of this bad situation, but there was no evidence there was a bad situation. The only bad situation was once the Defendant got there, and it took him two minutes to turn the victim from a vivacious bank teller into an almost mortally wounded woman.
Appellant objects that any evidence of the "bad situation" the prosecution refers to in his closing argument was barred from presentation through the granting of the State's motion in limine prior to trial. However, our review of the transcript of the motion hearing on this issue indicates that the trial court indicated it would allow the introduction of evidence as to what the defendant alleged he saw relating to drug use when he went to "Memo" Barrera's apartment on the night in question. Moreover, defense counsel had asserted in his opening statement that:
At that point, Danny realized where Karen was, went into the bedroom and pulled her out of there, which hehe fully admits wasn't the right thing to do, but he was beside himself withwith frustration and with fear, actually. She was in a situation thatthat could well have been dangerous to her health, contrary to everything that they had been working for with the children, contrary to the kind of life that they had started. They had gotten together, they started going to church, they've reallyor he felt like they really got their act together, and here she is in somebody else's bed, doesn't even know how to say his name. Was he upset? Yeah, Danny was upset. Trying to struggle for these values, and he finds this.
Generally, we think the prosecutor's remarks are a fair and reasonable response to defense counsel's opening statement and a comment on the lack of evidence of the "bad situation" alleged by the defendant. However, we do find the prosecutor to have acted improperly by characterizing the defendant's theory of the case as an argument that "she deserved it" and remarking that he found that most disturbing. "The most elementary rule governing the limits of argument is that it must be confined to the record evidence and the inferences that can reasonably and fairly be drawn therefrom." ABA Standards for Criminal Justice 3-5.8 Commentary. Of course the prosecutor could argue to the jury that no one deserved to be a victim of the violence alleged regardless of the particular circumstances from whence it arose. Furthermore, the prosecutor was reasonable in attempting to dissuade the jury from forming the belief that somehow Ms. Gallegos deserved the beating she received. However, where the prosecutor stepped over the line was to tell the jury that that is what the defense had argued to them. In our view that characterization is not an inference that can reasonably and fairly be drawn from record consisting of defense counsel's opening statement or presentation of evidence throughout the course of trial.
*28 [¶ 15] Ultimately, however, we do not find the improper statements alleged by appellant to rise to the level of plain error. In Mazurek v. State, 10 P.3d at 539, this court listed several non-exhaustive factors to be utilized to evaluate whether there was prejudicial plain error at the trial level as a result of prosecutorial misconduct. Those factors most relevant to our instant inquiry include 1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of competent proof to establish guilt, absent the remarks; 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; 5) the presence or absence of a limiting instruction; 6) whether the error was invited by defense counsel; 7) whether the failure to object could have been the result of tactical decisions; and 8) whether, in light of all the evidence, the error was harmless. Weighing all of the factors against the record as a whole, we do not think the prosecutor's isolated improper remarks put the fairness of the trial into serious question, requiring reversal and a new trial. Accordingly, appellant's judgment and conviction are affirmed.
NOTES
[1] Section 6-2-502 provides in pertinent part:

(a) A person is guilty of aggravated assault and battery if he:
...
(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]
[2] We also approve Standard 4-7.8 Defense Function, which is virtually identical to the prosecution standard. This court has consistently held that: "Closing arguments are meant to be just that, arguments premised upon the evidence already submitted to the jury. Prosecutors are no more limited in their closing than defense counsel. They may review the evidence and suggest to the jury inferences based thereon. The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence. However, there are limits, not only on prosecutors, but on all attorneys." Browder v. State, 639 P.2d 889, 893 (Wyo.1982) (emphasis added and citations omitted).
[3] The quote, "all that is necessary for the triumph of evil is that good men do nothing" is generally attributed to the eighteen century Irish statesman Edmund Burke.