2008 WY 37

**Leonard Luis BUSTOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0130.

Supreme Court of Wyoming.

April 8, 2008.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]  The appellant was convicted of "[a]t-tempt[ing] to cause, or intentionally or know-

ingly caus[ing] bodily injury to another with a deadly weapon," in violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2007). He appeals that conviction, raising the various issues set forth below. We affirm in part and reverse in part.

### ISSUES

[¶ 2] 1. Did the prosecutor commit misconduct by arguing facts not in evidence?

2. Did the prosecutor commit misconduct by making improper remarks about defense counsel and the defense theory of the case?

3. Did the district court err in considering psychiatric information contained in the presentence investigation report?

4. Did the district court err in ordering the appellant to pay for the cost of impaneling the jury when the appellant failed to appear for a trial setting?

### FACTS

[¶ 3] During the evening of May 6–7, 2006, the appellant went with friends to the Parlor Bar in Laramie, Wyoming. Soon thereafter, a fight ensued, in which the appellant participated. A bar patron, Brad Campbell, intervened by grabbing the appellant and pushing him face-first into a corner and pinning him against a wall. At that point, the bartender, Grant Statton, attempted to break up the fight by shoving Campbell and the appellant apart. Campbell fell across a table, where the appellant again "went after" him. Statton then grabbed the appellant around the waist and began moving him toward the exit door. As he did so, Statton felt what he described as a "big break" in his thigh. He pushed the appellant away and saw that the appellant was holding a knife in his hand.

[¶ 4] The appellant stumbled partway down the stairs that led to the bar exit. Statton and another bar employee, Nick Ondler, pursued him. The appellant "took a swipe at" Ondler with the knife, but missed. Statton and Ondler then chased the appellant

outside, where they tackled him and took the knife from him. A police officer was flagged down and the appellant was arrested.

[¶ 5] On May 8, 2006, the State filed a Felony Information charging the appellant with one count of possession of a deadly weapon with unlawful intent, one count of aggravated assault and battery for stabbing Statton, and one count of aggravated assault and battery for lashing out at Ondler with the knife. The appellant waived his right to a preliminary examination and was bound over to the district court for trial. An identical Felony Information was filed in the district court on May 19, 2006, and the appellant was arraigned on the three charges a little over a month later. He pled not guilty to each count.[1]

[¶ 6] The appellant did not appear at the scheduled time for his jury trial on October 16, 2006, and the jury was dismissed. When he appeared an hour later, he was arrested under a bench warrant, his bond was revoked, and he remained in jail until the rescheduled trial, which began on November 6, 2006. After a two-day trial, the jury acquitted the appellant of possessing a deadly weapon with unlawful intent, and of attempting to cause bodily injury to Ondler, but convicted him of stabbing Statton.

[¶ 7] The district court adjudicated the appellant guilty of aggravated assault and battery and ordered a presentence investigation on November 17, 2006. The district court's order mandated inclusion in the presentence investigation report (PSI) of a substance abuse assessment pursuant to the Addicted Offender Accountability Act found at Wyo. Stat. Ann. §§ 7–13–1301 through 7–13–1304 (LexisNexis 2007). The PSI, including the substance abuse assessment, was completed and sent to the district court on January 4, 2007. After a sentencing hearing, the appellant was sentenced to the custody of the Wyoming Department of Corrections for a period of three to six years, with credit for pre-sentence confinement, and with a recommendation that he be considered for placement in the Wyoming Youthful Offender Pro-

---

1. An Amended Felony Information was filed on October 13, 2006, three days before the scheduled trial. The only amendment appears to be a change in the alleged date of the offenses from May 7, 2006, to May 6 or 7, 2006. The appellant did not object to the amendment.

gram. In addition to other fees and costs, he was ordered to pay $1,440.00 to the Clerk of District Court for the costs incurred as a result of his failure timely to appear for his first trial setting. This appeal followed.

### DISCUSSION

#### Did the prosecutor commit misconduct by arguing facts not in evidence?

[¶ 8] The standard of review that we will apply to this issue is affected by the nature of the question and the context in which it arose. During the State's rebuttal closing argument, the following colloquy occurred:

[PROSECUTOR]: Ladies and gentlemen of the jury, you go back into the jury room, pay close attention to this green table in this photograph, because that green table is the mere witness that corroborates the testimony of Mr. Campbell. Mr. Campbell told you that after he tried to pull this defendant off of Johnny Vigil; that Grant Statton came over, grabbed him, and threw him into the corner, and he landed across that green table. If you look at the green table, you can see where the top has been in [sic] from having somebody thrown on it. That's what we call physical evidence. That corroborates witness's testimony.

[DEFENSE COUNSEL]: I'm going to object. There was no testimony that that table was bent during that altercation, Your Honor.

THE COURT: Overruled. The jury can look at the photos.

[¶ 9] Defense counsel's objection was couched in terms of stating facts not in evidence, as opposed to prosecutorial misconduct. On appeal, the appellant does not characterize the issue as being an error on the part of the district court in overruling the objection, but as misconduct by the prosecutor in making the statement. While there may be some question whether the issue of prosecutorial misconduct was raised below,

both parties presently treat the issue as such. Consequently, we will do the same, especially in view of our historical position that it is unethical for a prosecutor intentionally to misstate the evidence. *See Butz v. State*, 2007 WY 152, ¶ 28, 167 P.3d 650, 657 (Wyo.2007); *Wilks v. State*, 2002 WY 100, ¶ 30, 49 P.3d 975, 987 (Wyo.2002); *Trujillo v. State*, 2002 WY 51, ¶ 5, 44 P.3d 22, 24 (Wyo. 2002). Our standard of review where there has been an objection to a prosecutorial statement in closing argument is as follows:

> When an objection is launched to a statement made in closing argument, we defer to the trial court's ruling in the absence of a clear or patent abuse of discretion. *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998). Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. *Gayler*, [957 P.2d] at 860. *See also Metzger* [*v. State*], 4 P.3d [901], 910 [ (Wyo.2000) ].

*Burton v. State*, 2002 WY 71, ¶ 12, 46 P.3d 309, 313 (Wyo.2002). The allegedly offending statement is reviewed in the following context:

> Claims of prosecutorial misconduct are settled by reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the entire argument.

*Sanchez v. State*, 2002 WY 31, ¶ 18, 41 P.3d 531, 535 (Wyo.2002) (quoting *Metzger v. State*, 4 P.3d 901, 910 (Wyo.2000)).

[¶ 10] The appellant contends that the prosecutor's statement was improper because no witness testified that the table was bent by Campbell being thrown upon it. The State counters that such is a reasonable inference that could be drawn from the photograph in evidence, and that such inference would be corroborative of Campbell's testimony.[2] We agree with the State. First, no

---

2. An inference is
a deduction from the facts given, which is usually less than certain but which may be sufficient to support a finding of fact; "a pro-

cess of reasoning by which a fact or proposition sought to be established ... is deducted as a logical consequence from other facts, or a state of facts, already proved or admitted....

distinction exists between direct evidence and circumstantial evidence, and reasonable inferences may be drawn from the latter, as well as from the former. *Vanvorst v. State,* 1 P.3d 1223, 1229 (Wyo.2000). Second, it is for the jury to draw, or not to draw, inferences from the evidence. *Id.; Lovato v. State,* 901 P.2d 1132, 1134 (Wyo.1995). Third, the prosecutor may argue all reasonable inferences from the evidence. *Valerio v. State,* 527 P.2d 154, 157 (Wyo.1974).

[¶ 11] All of that is what happened in this case. Campbell testified that he was thrown onto a table during the scuffle. A photograph of that table, showing damage, was admitted into evidence. The prosecutor argued the reasonable inference that the table was damaged by Campbell being thrown upon it. It was then appropriately left to the jury to determine whether or not such inference should be drawn from the photograph and the testimony.

[¶ 12] Finally, we cannot see how the appellant could have been prejudiced by this rather inconsequential piece of evidence. In his brief, the appellant suggests that the case was about conflicting stories, and that he was prejudiced by allowing an unfair inference to be used to corroborate a State witness. But the appellant did not dispute Campbell's statement that he had pinned the appellant up against the wall, nor the fact that Campbell was pulled off of him just before Statton began forcing him toward the exit. In short, it simply did not matter to the appellant's defense whether Campbell was thrown onto the table or whether he did or did not damage it.

### Did the prosecutor commit misconduct by making improper remarks about defense counsel and the defense theory of the case?

[¶ 13] The appellant's second allegation of prosecutorial misconduct is directed at the following highlighted statements made in the

It has also been defined as 'a deduction of an ultimate fact from other proved facts, which proved facts, by virtue of the common experience of man, will support but not compel such deductions.' "

State's rebuttal closing argument, which statements we will set forth in context:

We had some real assertions as to—*I wrote it down as the truth according to [defense counsel ].* But let's look at what he says is in dispute. None of the victims were in uniform. Well, even Mr. Bustos testified that he wasn't going to balk at paying the cover charge or showing his ID to the bouncers because they weren't in uniform. It is not required under Wyoming law that bouncers wear uniforms, and rarely will any of you have any memories of bouncers at any kind of event like this wearing uniforms. That's not a justification for stabbing somebody in the leg. "I stabbed him because he wasn't wearing a uniform." That's pretty thin, when you really boil it down to what he's saying.

He says no one but the bouncers believe that the—that they identified themselves. Actually, what you heard was that it was a crowded bar. There were 50 to 60 people in there—unless you believe the defendant and his friend's testimony that maybe there were a hundred or 200 in there, but at least 50 to 60 people. The bouncer said they were running at capacity; they had to make sure there weren't too many people there. But it's a crowded bar. It's loud, and a fight has broken out. Now, all of the other witnesses said they didn't hear it. They didn't say it didn't happen. And really, it doesn't even matter. Does it matter if they ran over there and said they were law enforcement officers?

What do we really know happened? *Well, again, let's look at the truth according to [defense counsel ].* He says that his client was the victim of a big guy holding him over the stairs. He was looking down that landing and just knew he was going to be thrown down those stairs. The same photograph that shows you the green table Mr. Campbell was thrown onto also lets you see that even if you're standing in the very doorway, you have a landing in front of you that's at least as wide as

*Ogden v. State,* 2001 WY 109, ¶ 14, 34 P.3d 271, 275 (Wyo.2001) (quoting *Barron's Law Dictionary* 231 (2d ed.1984)).

the door. He wasn't standing on the brink of the stairs. He was simply looking out the door. He was being held by Mr. Statton in an attempt to restrain him. He was not being thrown anywhere. He was not—nobody testified he was picked up off the floor, except maybe Mr. Bustos. I didn't hear that, but picked up off the floor and thrown—held over the stairs? I don't know where that came from. It's hard to refute.

(Emphasis added.)

[¶ 14] Our standard for the review of this issue differs from the standard of review we applied to the first issue:

Because no objection to the prosecutor's closing argument was made at trial, we review the claim under our plain error standard. Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him. Prejudice results if [the appellant] can show that he was not allowed a trial on its own merits. Where the plain error elements are met, we may correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Dysthe v. State,* 2003 WY 20, ¶ 23, 63 P.3d 875, 884 (Wyo.2003) (internal citations and quotation marks omitted).

[¶ 15] The first prong of the plain error test has been met in that the questioned remarks clearly appear in the trial transcript. As to the second prong, the appellant characterizes the prosecutor's remarks, first, as implying that the appellant's self-defense defense was a lie, and second, as being a personal attack upon defense counsel. In support of the first contention, he cites *Doherty v. State,* 2006 WY 39, ¶ 22, 131 P.3d 963, 970 (Wyo.2006) and *Barnes v. State,* 642 P.2d 1263, 1265–66 (Wyo.1982), for the proposition that the prosecutor can only suggest that the appellant is a liar if that suggestion is supported by the evidence. In support of the contention that disparaging remarks about defense counsel are improper, he cites *Johnson v. Gibson,* 169 F.3d 1239,

1250 (10th Cir.1999), *overruled in part on other grounds by Green v. State,* 1993 OK CR 30, 862 P.2d 1271 (Okla.Crim.App.1993). The authority stated does, indeed, support the stated propositions.

[¶ 16] In its brief, the State argues that the prosecutor's remarks did not violate a clearly established rule of law because it is the role of the jury in a credibility contest to determine who is telling the truth, and the prosecutor was merely emphasizing for the jury the two different versions of the event presented by the evidence. *See Miller v. State,* 2003 WY 55, ¶ 22, 67 P.3d 1191, 1197 (Wyo.2003) (as fact finder, jury weighs credibility of witnesses). We agree. While we are not enamored of the prosecutor's phraseology, and we do not condone the personalization of closing argument, we do not find that these words, in this context, violated a specific and clear rule of law. We condoned much more direct and more egregious statements that a defendant was lying in both *Doherty,* 2006 WY 39, ¶¶ 19, 22, 131 P.3d at 969, 970–71 ("There is no tale that is too tall to tell. There is no person too sacred to lie to.... [E]ven if it means taking the stand and lying to 12 jurors of your peers"); and *Barnes,* 642 P.2d at 1265–66 ("While calling a defendant a thief and a liar may not be in good taste, the evidence discloses a reasonable inference that he was not truthful in his testimony and he was in fact a thief"). Further, an implication of disparagement, unchallenged below, simply does not rise to the level of professional misconduct that violates the rules of professional conduct for Wyoming lawyers, the ABA standards for prosecutors, or the right to due process of law. *See* Wyo. R. Prof. Conduct 3.4(e); and *Trujillo,* 2002 WY 51, ¶ 5, 44 P.3d at 24.

[¶ 17] Even if the statements at issue could be seen as violating a clear rule of law, the appellant has not met his burden of proving that he was prejudiced thereby. *See Butz,* 2007 WY 152, ¶ 28, 167 P.3d at 657. At most, the two statements were "disparagement by innuendo," they were brief, and they were said within the context of a comparison of the two versions of the incident. It just cannot be said that they prevented a trial on the merits or seriously affected the fairness

of the trial. Finally, we note that the jury was instructed that statements of counsel were not to be considered as evidence, and we assume that juries follow the court's instructions. *Doherty*, 2006 WY 39, ¶ 28, 131 P.3d at 972; *DeJulio v. Foster*, 715 P.2d 182, 187 (Wyo.1986); *Eckert v. State*, 680 P.2d 478, 485 (Wyo.1984); *Slaughter v. State*, 630 P.2d 517, 519 (Wyo.1981).

[¶ 18] In his brief, the appellant opines that:

> The disparaging remarks and relying on facts not in evidence could have affected the jury's deliberations. This was not a case of overwhelming evidence and boiled down to whose version was believable. The prosecutor's misconduct could have affected that decision to Mr. Bustos' detriment.

[¶ 19] The problem with this argument, of course, is that "could have affected" is not the test for prejudice under plain error analysis. Rather, the test is whether there is a reasonable possibility that the appellant would have received a more favorable verdict in the absence of the error. *Miller v. State*, 2006 WY 17, ¶ 15, 127 P.3d 793, 798 (Wyo. 2006). That standard has not been met in this case.

### Did the district court err in considering psychiatric information contained in the presentence investigation report?

[¶ 20] As set forth earlier herein, the PSI contained a statutorily required substance abuse assessment, known as an ASI— Addiction Severity Index. *See supra* ¶ 7. Although he did not object below, the appellant contends on appeal that the district court erred in considering at sentencing psychiatric information found in the ASI. The appellant believes we should review this "error" for an abuse of discretion, while the State argues that the lack of an objection below means that plain error analysis is appropriate.

[¶ 21] Having just decided this very issue in *Janpol v. State*, 2008 WY 21, ¶¶ 14–20, 178 P.3d 396, 402–403 (Wyo.2008), we decline to repeat the detailed analysis of that case. Suffice it to say that, because the question is one of statutory construction— whether the judge is legally entitled under the statute to consider the psychiatric information—it is a question of law that we review *de novo*. The short answer is that the very intent of the statute is to provide information to the sentencing judge concerning the possibility of placing the offender in a treatment program without creating a risk to public safety, and that the psychiatric information is vital to that determination. Furthermore, because the psychiatric information was used for the express purpose for which it was disclosed—completion of the ASI and PSI—there was no confidentiality breach. No error occurred.

### Did the district court err in ordering the appellant to pay for the cost of impaneling the jury when the appellant failed to appear for a trial setting?

[¶ 22] The sentence imposed upon the appellant in this case contained a requirement that he pay the Clerk of District Court $1,440.00 because he failed timely to appear for his first trial setting. This sanction, requested by the State, represented the appearance fee for 48 prospective jurors. No objection to the sanction was lodged at the time it was imposed. The appellant now contends, however, that the district court erred thereby.

[¶ 23] The parties' briefs provide little guidance in resolving this issue. The appellant cites *Capellen v. State*, 2007 WY 107, ¶ 11, 161 P.3d 1076, 1079 (Wyo.2007), for the proposition that this Court reviews sentencing decisions for an abuse of discretion. He then relies upon U.R.D.C. 501(b) and *Johnson v. State*, 532 P.2d 598, 601 (Wyo.1975), for the additional proposition that jury fees may not be taxed as part of the "costs of prosecution" in a criminal case.[3] The State

---

**3.** U.R.D.C. 501(b)(2) provides as follows:

(2) Assessment of Costs Upon Defendant.— Payment of the costs of prosecution may be added to and made a part of the sentence in

any felony case if the court determines that the defendant has an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay.

more accurately describes the $1,440.00 assessment as a sanction, rather than a cost, which may be imposed under U.R.D.C. 901 for the appellant's failure timely to appear for trial.[4] Because there was no objection below, the State espouses plain error review in this Court. That standard was set forth hereinabove. *See supra* ¶ 14. An error of law under the circumstances may be considered an abuse of discretion. *In re CT*, 2006 WY 101, ¶ 8, 140 P.3d 643, 646 (Wyo.2006).

[¶ 24] The State cites *Travelers Insurance Company v. Palmer*, 714 P.2d 765, 765–67 (Wyo.1986), where this Court affirmed the district court's imposition of sanctions under U.R.D.C. 901 against a party for failing to appear at a scheduled pretrial conference. Further, the State contends that U.R.D.C. 503(b) specifically authorizes the district court to impose jury fees as a sanction for causing a mistrial, which the State defines as "[a] trial that the judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings." *See Black's Law Dictionary* 1023 (8th ed.2004). What neither party does, however, is point the Court to any precedent for the precise question of whether a court may require a criminal defendant to pay, as a sanction, the jury appearance fees for failing to appear at a scheduled trial.

[¶ 25] Wyoming's case law is clear that "institutional costs," including jury fees, may not be assessed against a criminal defendant as "costs." *Seaton v. State*, 811 P.2d 276, 282–83 (Wyo.1991); *King v. State*, 780 P.2d 943, 958 (Wyo.1989); *Kaess v. State*, 748 P.2d 698, 703 (Wyo.1987); *Johnson*, 532 P.2d at 601; *Arnold v. State*, 76 Wyo. 445, 306 P.2d 368, 378 (1957). We are not satisfied, however, that this answers the question presently before us. Clearly, the reason for not allowing the assessment of jury fees against a criminal defendant is based upon the desire to protect the constitutional jury trial right. *Arnold*, 306 P.2d at 377–78. We are not convinced that this precept automatically insulates a criminal defendant against appro-

priate sanctions for failing to appear for a scheduled trial. There is a fundamental difference between paying the cost of the jury before whom one was tried, and paying the one-day appearance fees for a jury venire that was dismissed due to one's dereliction.

[¶ 26] Several paths exist, or at least have not been foreclosed by this Court, for the imposition of sanctions in these circumstances: (1) the inherent power of a trial court to manage its docket and enforce its orders; (2) contempt of court; and (3) enforcement of U.R.D.C. 901 and 503(b). *See Bi–Rite Package, Inc. v. District Court of Ninth Judicial Dist.*, 735 P.2d 709, 710–17 (Wyo.1987); *Jerrel v. State*, 765 P.2d 982, 983–84 (Alaska Ct.App.1988); 20 Am.Jur.2d *Costs* § 109 (2005). We are not willing to follow any of those paths in this case because the record simply does not provide us with sufficient facts to determine which path, if any, is appropriate. The primary problem is the total lack of any evidence that the appellant's failure to appear was willful. No transcript of the aborted trial is provided. Neither is there any testimony from the appellant or his counsel as to his tardiness. The only information in the record is found in The Court's Order Resetting Jury Trial, wherein the district court states that the appellant "thought the time for trial was at 10:00 A.M. not 9:00 A.M." This is an inadequate basis for the imposition of sanctions. Also lacking in the record is any evidence as to the computation of the $1,440.00, other than the district court's statement that such was "what it cost the County." That portion of the judgment and sentence ordering payment to the Clerk of District Court is reversed.

## CONCLUSION

[¶ 27] The prosecutor did not commit misconduct and it was not error for the district court to consider the psychiatric information contained in the presentence investigation report. The judgment and sentence is affirmed in that regard. The record does

---

4. U.R.D.C. 901 provides, in part, as follows:
   The following may be imposed for violation of these rules:

   . . . .
   (2) Monetary sanctions;
   . . . .

not, however, contain sufficient evidence to sustain the imposition of sanctions against the appellant in the form of the jury costs from the aborted trial, and that portion of the judgment and sentence is reversed.

[¶ 28]   Remanded for entry of a judgment and sentence consistent herewith.