2017 WY 88

**Billy M. CARRIER, Jr., Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**S-16-0265**

Supreme Court of Wyoming.

August 1, 2017

360

Representing Appellant: Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Appellant Billy Carrier was convicted of sexually abusing his minor step-granddaughter multiple times. He challenges his convictions, raising issues related to the denial of his motion for a new trial and alleged cumulative error. We affirm.

## ISSUES

[¶2] Appellant presents two issues that, as detailed in the discussion section below, include several subparts. They can generally be framed as follows:

1. Did the district court abuse its discretion by denying Appellant's motion for a new trial?

2. Did cumulative error warrant reversal of Appellant's convictions?

## FACTS

[¶3] Appellant is the step-grandfather of MK, a girl who was around five years old when she was first sexually abused.[1] The first instance of sexual abuse occurred when MK spent a weekend with her grandparents.

---

1. MK's father is the oldest son of Appellant's wife.

MK was sitting on Appellant's lap in the living room, covered by a blanket. Appellant pulled her pants down and inserted his finger into her vagina for a few minutes.

[¶4] On another occasion, when MK was about seven years old, she was again at her grandparents' home and took a shower. MK did not get all of the shampoo out of her hair, so her grandmother had her return to the bathroom with Appellant so he could help rinse it out. Appellant closed the bathroom door after he and MK went in, and the bathtub faucet was turned on. MK knelt down between the tub and the toilet and put her head under the faucet to rinse her hair. Appellant went behind her, pulled down her pants, and began rubbing his penis against her rear on and around her anus. The incident ended when MK's grandmother called out from another room to ask what was taking so long.

[¶5] A third incident occurred when MK was again staying the night at her grandparents' home. While MK was in bed, Appellant entered her bedroom, removed her covers, and then pulled down her pajama pants. Appellant then pulled down his own pants and penetrated her vagina with his penis while MK pretended to be asleep. Yet a fourth occasion occurred when Appellant again entered MK's bedroom while she slept and repeated this same type of sexual abuse. After these events, MK bled vaginally.

[¶6] MK told her mother about the abuse, but her mother did not believe her. Later on, MK was attending church and overheard a congregation member speak about surviving sexual abuse. MK approached this person and revealed that Appellant had been sexually abusing her. The two then reported the abuse to the pastor, who in turn notified MK's mother.

[¶7] It took several weeks for MK's mother to do anything, but eventually she took MK to see a nurse practitioner, Jennifer Davis. At the time of Nurse Davis' examination, MK was nine years old. Nurse Davis examined MK and noted that MK's vaginal opening was abnormally large for a child of that age.

Nurse Davis also noticed possible abnormal thickening of MK's vagina that could have been caused by a laceration that had scarred. Based upon her findings, Nurse Davis referred MK to Carrie Kassahn, a sexual assault nurse examiner.[2]

[¶8] Nurse Kassahn noted a similar area of thickening when she examined MK, and she documented potential vaginal irregularities with several photographs. She noted a thickening near MK's hymen that would be uncommon for a girl of her age. After the examination, the matter was referred to law enforcement for investigation.

[¶9] Appellant was initially charged with and convicted of four counts of first-degree sexual abuse of a minor. However, that conviction was vacated, and a new trial was ordered pursuant to W.R.A.P. 21, because Appellant's trial counsel was found to be ineffective for medical reasons.

[¶10] The State amended the charges it pursued in the second trial, asserting three counts of first-degree sexual abuse of a minor, and one count of second-degree sexual abuse of a minor. The statutes setting forth these offenses state in pertinent part:

**§ 6-2-314. Sexual abuse of a minor in the first degree; penalties.**

(a) An actor commits the crime of sexual abuse of a minor in the first degree if:

(i) Being sixteen (16) years of age or older, the actor inflicts sexual intrusion on a victim who is less than thirteen (13) years of age[.]

* * *

**§ 6-2-315. Sexual abuse of a minor in the second degree; penalties.**

(a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if: . . .

* * *

(ii) Being sixteen (16) years of age or older, the actor engages in sexual contact

---

**2.** These specialized medical professionals are sometimes referred to by the acronym "SANE" nurse.

of a victim who is less than thirteen (13) years of age[.]

Wyo. Stat. Ann. §§ 6-2-314(a)(i) & 6-2-315(a)(ii) (LexisNexis 2017).

[¶11] The obvious distinction between the two offenses is that first-degree sexual abuse requires intrusion, whereas second-degree sexual abuse requires sexual contact. These terms are defined by statute, but do not require further elaboration here. *See* Wyo. Stat. Ann. § 6-2-301(a)(vi) and (vii) (LexisNexis 2017).

[¶12] The case proceeded to retrial, and a jury found Appellant guilty of all counts. Appellant then filed a motion for new trial under W.R.Cr.P. 33, alleging a number of errors during the second trial. The district court denied the motion. It then sentenced Appellant to not less than ten nor more than fifteen years on the second-degree sexual abuse conviction, and not less than thirty nor more than forty-five years on each of the three first-degree sexual abuse convictions. The sentences for the first-degree convictions are to be served concurrently, and the sentence for the second-degree conviction will be consecutive to the first-degree convictions and suspended in favor of ten years of probation. This appeal timely followed sentencing.

## DISCUSSION

### *Did the district court abuse its discretion by denying Appellant's motion for new trial?*

[¶13] Appellant argues that the district court wrongly denied his motion for a new trial for five separate reasons. In that motion, he claimed the following errors: (1) admitting two photographs of MK's vagina into evidence and allowing the State to show the photographs to the jury: (2) prohibiting the defense from eliciting testimony concerning allegations of sexual abuse MK is claimed to have made against Appellant's son; (3) prohibiting the defense from playing the entire recording of Appellant's interview with law enforcement; (4) introducing improper opinion testimony through Nurse Practitioner Davis; and (5) the prosecutor's reference to that testimony in closing argument.

[¶14] In criminal cases, new trials are permitted if "required in the interest of justice." *Emerson v. State*, 2016 WY 44, ¶ 11, 371 P.3d 150, 153 (Wyo. 2016) (quoting W.R.Cr.P. 33(a)). A district court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *Id.*; *Willoughby v. State*, 2011 WY 92, ¶ 8, 253 P.3d 157, 161 (Wyo. 2011). This Court has often explained that a district court abuses its discretion when it could not have reasonably concluded as it did. *Emerson*, ¶ 11, 371 P.3d at 153. Thus, our primary focus is on the reasonableness of the choice the trial court made. *Id.* "If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious." *Id.* (citations omitted).

### *Admission of Photographs*

[¶15] Appellant first contends that the district court abused its discretion in denying his motion for a new trial because it admitted two photographs depicting MK's vagina and allowed the State to display them prominently to the jury. The photos were taken by Nurse Kassahn during her sexual assault examinations of MK. Appellant objected to the introduction of these photos, arguing (as he does on appeal) that they were irrelevant and prejudicial, and that they should not therefore have been received under W.R.E. 401 through 403. The State asserted that the photos showed evidence that MK suffered vaginal intrusion, an element of three of the charges. The district court overruled the objection and received the photographs.

[¶16] The State utilized the photos during the testimony of Nurse Davis and Nurse Kassahn to explain a perceived abnormality with MK's vagina. Both nurses testified that an area on the lower left side of MK's hymen caused some concern, and that the pictures depicted an irregularity. Appellant points out that the photos were displayed on an eight foot by six foot screen directly above his head.

[¶17] Deciding whether to receive photographs into evidence—like other evidentiary decisions—is left to the reasonable discretion of the district court. *Bhutto v. State*, 2005 WY 78, ¶ 29, 114 P.3d 1252, 1264 (Wyo. 2005). Its decision is entitled to considerable deference, and we will not reverse if there is any legitimate basis for the ruling. *Id.* However, that discretion is subject to rules of evidence. *Id.* "To be admissible, photographs, like other evidence, must be relevant and probative." *Id.* (citing W.R.E. 401, 402). "Further, even relevant photographs may be excluded if their probative value is outweighed by the danger of unfair prejudice." *Id.* (citing W.R.E. 403).

[¶18] Wyoming Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have explained that "[i]n criminal cases, evidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Hill v. State*, 2016 WY 27, ¶ 30, 371 P.3d 553, 562 (Wyo. 2016).

[¶19] The relevancy of these photos is certainly debatable. Nurse Kassahn was only able to say that the area of thickening could have been the result of injury or a congenital abnormality. She lacked the qualifications to say which it was. She admitted that she had conferred with a more experienced colleague who is something of a mentor to her, and they concluded that it was probably an "abnormal normal"—i.e., just the way MK was formed. She also testified that sexual intrusion in a child of MK's age can occur without any injury, even though the victim feels considerable pain.

[¶20] Even so, we conclude that although the photos may not have been direct evidence of sexual intrusion, they were relevant under W.R.E. 401. They were used to illustrate the details of the SANE exam, which tended to show that reasonable efforts were made to investigate MK's claims. They also illustrated what the two nurses found in their examinations.

[¶21] However, while relevant evidence is generally admissible, it is subject to other rules of evidence or statutes. W.R.E. 402. Thus, the next step in our analysis is to determine whether the two relevant photos are more unfairly prejudicial than probative, as Appellant asserts. Rule 403 controls the analysis: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." W.R.E. 403. "For this court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, the appellant must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Wilks v. State*, 2002 WY 100, ¶ 9, 49 P.3d 975, 981-82 (Wyo. 2002) (citations and quotation marks omitted).

[¶22] Appellant has failed to demonstrate that the two photos had little or no probative value (although their probative value may not have been overwhelming), and that they were extremely inflammatory or introduced for the purpose of inflaming the jury. Appellant simply asserts that the photos were "degrading to MK and display of them could only have offended the jury and invoked sympathy."

[¶23] While the photos are of a most sensitive nature, the district court did not need to sanitize the case by withholding fair evidence of the crime and its results. *Bhutto*, ¶ 29, 114 P.3d at 1264. We have acknowledged "that photographs may have special significance in assisting juries to reach tough decisions." *Id.* A picture is sometimes worth a thousand words, and ought to be admissible in cases in which the injuries have special significance and can be more readily perceived by documented photos. *Id.* (quoting *Barnes v. State*, 858 P.2d 522, 528 (Wyo. 1993)).

[¶24] Although it is a relatively close call given the substance of the testimony about the photos, under the controlling standard of review we are convinced that the district court acted reasonably in admitting them after finding that they were relevant and that their probative value was not substantially

outweighed by the potential for unfair prejudice. Accordingly, the district court did not abuse its discretion in denying Appellant's motion for a new trial on this point.

### Exclusion of MK's Allegations against Another

█ [¶25] Appellant also contends that he should have been allowed to present evidence that MK accused another family member of sexually abusing her. However, the record reveals that his attorney never actually offered that evidence. Rather, only after he was convicted and moved for a new trial did Appellant assert that he should have been allowed to present this evidence in his defense.

[¶26] If Appellant had sought to introduce this evidence and the district court had refused it, he would then have had an opportunity to make an offer of proof. We have explained:

There is only one prudent way for an offer of proof to be made at trial. The attorney who seeks to offer evidence, which has been refused or to which an objection has been upheld, should take the initiative. The offer of proof should then take the form of counsel's eliciting the proposed testimony directly from the witness, or entering the tangible evidence in the record, all outside of the hearing of the jury.

*Bloomfield v. State,* 2010 WY 97, ¶ 23, 234 P.3d 366, 375 (Wyo. 2010) (quoting *Rudolph v. State,* 829 P.2d 269, 275 (Wyo. 1992)); *see also* 1 *McCormick on Evid.* § 51 (7th ed. 2016).[3]

[¶27] Because Appellant's attorney did not preserve this issue by offering the evidence and then making an offer of proof if it was refused, his assertion that the district court somehow erred is without merit. Beyond that, without an offer of proof, we have no realistic means of evaluating whether it might have been admissible and whether failure to receive it could have been prejudicial. *Guy-Thomas v. Thomas,* 2015 WY 35, ¶ 12,

344 P.3d 782, 786 (Wyo. 2015). Under the circumstances, we can only therefore conclude that the district court did not abuse its discretion in denying Appellant's motion for a new trial on this theory because there is no underlying error it could have made.

### Refusal to Play Appellant's Entire Law Enforcement Interview

█ [¶28] The State's lead investigator in the case, Detective Martinez, testified to a limited extent about his interview of Appellant during the investigation. Specifically, the detective indicated that during the interview Appellant was shown a picture that MK had drawn of Appellant and his penis. Detective Martinez stated that Appellant silently looked at the picture for approximately forty seconds before making any sort of response.

[¶29] Based upon this testimony, Appellant's counsel offered the audio tape of the hour and a half long interview and sought to play it for the jury. Counsel explained that he wanted to play the interview to provide the jury with the tone and context of things Detective Martinez described in his testimony. The district court declined to receive the entire recording, but instead offered counsel the opportunity to play specific portions of it. Counsel said he would think about it, and agreed to recall Detective Martinez later if he and Appellant decided to try to play portions of the recording for the jury. However, counsel did not recall the detective or offer portions of the recorded interview after that point in time.

[¶30] The case continued without mention of the interview until closing arguments, when the prosecutor brought up Detective Martinez's testimony, including the portion about his interview with Appellant. After closing argument, Appellant moved again for a mistrial and claimed that the prosecutor improperly implied that certain things had happened during the interview when Appellant claimed they had not.

---

**3.** The record reflects that Appellant's counsel mentioned making some sort of "offer of proof in a kind of informal way" about the allegations against another. However, his passing comment does not comport with our precedent in *Bloom-* *field,* ¶ 23, 234 P.3d at 375, and is therefore insufficient to preserve the issue. *Cf. Anderson v. State,* 2014 WY 13, ¶ 20, 317 P.3d 1108, 1115 (Wyo. 2014).

[¶31] Appellant contends that a new trial is warranted because the district court did not allow the whole recording to be played to the jury, and he cites W.R.E. 106 as support. That rule states:

**Rule 106. Remainder of or related writings or recorded statements.**

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

W.R.E. 106. This rule, commonly referred to as the "rule of completeness," has previously been examined by this Court on several occasions.

[¶32] In *Ramirez v. State*, 739 P.2d 1214, 1220 (Wyo. 1987), the defendant cross-examined an officer about a taped statement made by the victim. On redirect, the State moved for admission of the entire transcript of the statement under W.R.E. 106. *Id.* The defense objected on the grounds of cumulativeness and relevance, but the district court received the transcript over that objection. *Id.* On appeal, we assessed the circumstances and determined that admitting the entire transcript had been improper because what was testified to was consistent with the transcript, and therefore cumulative. *Id.*[4]

[¶33] However, in *Hayes v. State*, 935 P.2d 700, 706 (Wyo. 1997), the defendant complained that he was denied a fair trial when the State was allowed to have witnesses read a complete police report into evidence. Defendant cross-examined two witnesses about an interview of the victim, which was the subject of the police report. On redirect, the State inquired whether the cross-examination had covered the entire report and began asking questions about other portions of the report. *Id.* The defendant objected, claiming that the information in the report was inadmissible hearsay. The district court overruled the objection and allowed the State to have the entire report read to, *inter alia,* provide a more complete and accurate representation of the victim's statements than had been presented by the defense. *Id.* This Court examined W.R.E. 106 and found "no abuse of discretion in allowing the State to present a more complete and accurate picture of the police report once the defense opened the door and presented a partial and selective picture of what was in the report." *Id.*

[¶34] In *Lopez v. State*, 2004 WY 103, ¶¶ 59-64, 98 P.3d 143, 157-58 (Wyo. 2004), the defendant complained that it was error for the district court to receive his entire statement to law enforcement at the State's request after his counsel had referred only to portions of it in his redirect examination. *Id.* ¶ 59, 98 P.3d at 157. We consulted W.R.E. 106 and concluded that "[g]iven the dispute regarding what [the defendant] had actually said in his statement to [the detective], the trial court did not abuse its discretion in permitting the jury to have the entire statement to consider." *Id.* ¶ 64, 98 P.3d at 158.

[¶35] More recently, in *Counts v. State*, 2012 WY 70, 277 P.3d 94 (Wyo. 2012), the State offered letters written by the defendant into evidence, and they were received by the district court after it determined that three kinds of material should be redacted. *Id.* ¶ 11, 277 P.3d at 100. The defendant then tried to have the letters admitted in their entirety. *Id.* As part of our analysis, we quoted an opinion from the United States Court of Appeals for the Tenth Circuit explaining the very nearly identical federal rule:

The purpose of Rule 106 is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received. The rule of completeness functions as a defensive shield against potentially misleading evidence proffered by an opposing party. The rule of completeness, however, does not necessarily require admission of an entire statement, writing or recording. Rather, only those portions which are relevant to an issue in the case and necessary to clarify or explain the portion already received need to be admitted. In determining whether a disputed portion of a statement must be admitted under the rule of com-

4. This Court found that the error was harmless, however. *Id.*

pleteness, the trial court should consider whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence.

*Id.* ¶ 14, 277 P.3d at 100-01 (quoting *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010)). Ultimately, we concluded that the redacted information was cumulative, and that therefore the district court did not abuse its discretion in redacting the letters as it did. *Id.* ¶ 23, 277 P.3d at 103.

[¶36] In this case, while Appellant suggests that the tone of Detective Martinez's testimony about certain portions of the interview was somehow disingenuous, he does not assert that there was any substantive factual difference between the detective's testimony and the entire interview. Thus, at best, admitting the entire recording would have been unwarranted under W.R.E. 106. Besides, the district court gave Appellant's counsel a chance to identify and offer portions of the interview that could have clarified, explained, or contradicted the portions that Detective Martinez testified about. Appellant's counsel did not do so.

[¶37] Furthermore, we note that had the district court admitted the entire interview, substantial evidentiary concerns would have arisen. As is often the case, the interview included allegations of uncharged misconduct, Detective Martinez vouching for the victim's credibility and truthfulness, and hearsay. For all of these reasons, we conclude that the district court acted reasonably, and that it did not therefore abuse its discretion in declining to receive and play the entire hour and a half interview for the jury.

### Nurse Davis' Improper Opinion Testimony

[¶38] Appellant also claims that the district court abused its discretion in denying his motion for a new trial on the basis of improper opinion testimony from Nurse Practitioner Davis. Nurse Davis was first questioned concerning her testimony and possible opinions outside the presence of the jury. After that, the State conceded that it had not designated Nurse Davis as an expert and agreed not to ask any questions about the size of MK's vaginal opening being evidence of sexual abuse. The district court confirmed this understanding.

[¶39] Nevertheless, during Nurse Davis' testimony, the State asked whether she was concerned about the size of MK's vaginal opening. She responded in the affirmative, and the State asked "why?"[5] Nurse Davis explained: "It shouldn't be that big. Only a woman that's been sexually active would usually have something that large or who has had a child." A bench conference was held shortly thereafter, and the district court decided a curative instruction was appropriate. It instructed the jury:

> Ladies and gentlemen, there was a portion of Miss Davis's testimony where she was asked about the size of the vaginal opening. And she had, in the course of her answer, had made a statement that "only a woman that has been sexually active or has had a child would have a vaginal opening that large." I would specifically instruct you to disregard that part of Miss Davis's testimony and not consider it at all. So that is the instruction of the Court.

[¶40] "We have said many times that a trial error may be corrected by an appropriate curative instruction, and that we presume that jurors follow the court's instructions." *Bruce v. State*, 2015 WY 46, ¶ 75, 346 P.3d 909, 931 (Wyo. 2015) (quoting *Willoughby*, ¶ 11, 253 P.3d at 161). Generally, when improper testimony is stricken and the jury is instructed to disregard the improper evidence, the instruction is deemed sufficient to prevent prejudice. *McGill v. State*, 2015 WY 132, ¶ 12, 357 P.3d 1140, 1145 (Wyo. 2015).

[¶41] Here the objectionable testimony by Nurse Davis consists of one brief statement. The district court took appropriate remedial action by striking the response and giving the jury a curative instruction. Moreover, SANE nurse Kassahn, who was trained in the specialty of sexual assault examination, testified that there was no merit to measur-

---

5. During the bench conference on the matter, the prosecutor made sure that the record was clear that his question was not intentionally trying to elicit the prohibited testimony.

ing vaginal openings, and that the size of a vaginal opening had no bearing on whether a sexual assault of a child has taken place. In light of the district court's cautionary instruction and this testimony, we cannot say that Appellant's motion for a new trial should have been granted as he has shown no prejudice from Davis' statement.

### Prosecutor's Comment during Closing Argument

[¶42] During closing argument, the prosecutor indicated that "Miss Davis testified she was concerned about the size of M.K.'s vaginal opening. She thought it was larger than a 9-year old girl's vagina should be." Appellant contends that this statement during closing argument warrants a new trial because it is a reference to evidence the court ordered stricken. Appellant's counsel did not object or move to strike the comments.

[¶43] Our standard of review for improper argument is as follows:

If the trial court abused its discretion by allowing impermissible argument, we will only reverse if a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. The arguments not objected to are reviewed under our plain error standard. [Appellant] has the burden of proving that a substantial right has been denied him, and, as a result, he has been materially prejudiced. As to a party's failing to timely object to an improper closing argument, the appellate threshold for reversal is a substantial risk of a miscarriage of justice.

*Moe v. State,* 2005 WY 58, ¶ 17, 110 P.3d 1206, 1212-13 (Wyo. 2005) (citations and quotation marks omitted).

[¶44] Although the prosecutor did not explicitly refer to Davis' testimony that the size of the vaginal opening was related to sexual abuse, we can see no reason for the prosecutor to refer to the size of the opening other than to try to remind the jury of "the concern" Davis expressed—that it was the result of intercourse. This seems to us to be a roundabout way of arguing that the size of the opening was related to sexual abuse.

[¶45] However, this comment occurred in the face of an instruction to the jury to ignore that evidence. We presume that jurors follow curative instructions. *Bruce,* ¶ 75, 346 P.3d at 931 (citing *Willoughby,* ¶ 11, 253 P.3d at 161). As already noted, Nurse Kassahn testified that this evidence was of no value in determining whether there was been a sexual assault. Appellant has therefore not shown material prejudice or substantial risk of a miscarriage of justice.

### Was there cumulative error warranting the reversal of Appellant's convictions?

[¶46] Aside from the asserted errors examined above, Appellant complains that his trial involved cumulative error due to four additional events during trial. Again, we must disagree.

[¶47] The ethos of our evaluation for cumulative error is to determine if the cumulative effect of two or more individually harmless errors has the potential to prejudice Appellant to the same extent as a single reversible error. *Guy v. State,* 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008). In conducting this evaluation, consideration is given only to those instances that we have determined to be errors. *Id.* "We will reverse a conviction only when the accumulated effect of the errors constitutes prejudice and the conduct of the trial is other than fair and impartial." *Id.* (citations, internal quotation marks, and brackets omitted); *see also McGill,* ¶ 21, 357 P.3d at 1148.

### Uncharged Misconduct Evidence

[¶48] Appellant contends that uncharged character evidence was improperly admitted. He points to six perceived pieces of uncharged misconduct evidence:

- Nurse Kassahn testified that MK "stated to me that from a period when she was fairly young until she was about 8 years old that he, using her direct word, he would come into her room, pull her pants down, pull his pants down; and then she stated, then it would start.... [h]e would start humping me.... he would put his penis in her vagina and move up and down on her."

- MK testified about an incident where Mr. Carrier came into her room. Although she "didn't see or hear anything" she "knew" he pulled down his pants, and tried to roll her over but then nothing ultimately happened because Mrs. Carrier asked "Who are you talking to?"

- Testimony was elicited from MK about during which she said, ". . . like, one, two, three, a few times basically I was bleeding." The prosecutor followed this up with "Did it [bleeding] generally happen after Bill had been in your room the night before?"

- MK specifically told the jury, "There were a lot of incidents, but I was—I was—I was, like, asked to talk about these four incidents because these four incidents are the charges." This was in response to cross-examination, but was part of the defense's attempt to clarify the testimony that had been previously allowed about MK "bleeding."

- MK testified about touching Mr. Carrier's penis and it being "squishy." She told the jury on cross-examination, "It was a completely different incident."

- The prosecutor asked Mr. Carrier during cross-examination, "You mentioned working at Safeway. Isn't it true that you got in trouble for selling cigarettes to minors?" Mr. Carrier responded, "No." But the prosecutor persisted, claiming that another witness, Ms. Hobbs, the former girlfriend of Mr. Carrier's son, was "provided things to her that she couldn't purchase because she was underage."

[¶49] Appellant's argument lacks legitimate analysis, however, regarding whether his concerns actually amount to error, which is a necessary prerequisite. *See Hodges v. State*, 904 P.2d 334, 342 (Wyo. 1995) ("When no error has occurred, a claim of cumulative error cannot be recognized."). Nevertheless, we will assess each alleged error as best we can.

[¶50] Aside from simply pointing to the snippets of testimony above, Appellant does not analyze how these instances involve misconduct, fails to identify which of these instances were objected to at trial and which

were not, and omits any sufficient explanation of why this evidence was admitted in error. Consequently, under our long-standing precedent, we will not attempt to construct an analysis that is lacking cogent argument and supportive authority. *See Snyder v. State*, 2015 WY 91, ¶ 15 n.1, 353 P.3d 693, 695 n.1 (Wyo. 2015).

### Limiting Instruction

[¶51] The district court gave a cautionary instruction concerning a witness whose testimony was provided to show that MK had made a prior consistent statement. Appellant does not appeal the admission of the prior consistent statement testimony; rather, his narrow argument focuses on the "prejudicial effect" of the limiting instruction in relation to the testimony.

[¶52] Appellant failed to object to the limiting instruction given, and thus our review is for plain error. *Haire v. State*, 2017 WY 48, ¶ 32 n.1, 393 P.3d 1304, 1312 n.1 (Wyo. 2017). To establish plain error, Appellant must prove: "(1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him." *Id.* ¶ 32, 393 P.3d at 1312 (quoting *Snow v. State*, 2009 WY 117, ¶ 13, 216 P.3d 505, 509 (Wyo. 2009)).

[¶53] The district court instructed the jury contemporaneously with the witness's testimony:

Ladies and gentlemen, I'm going to give you an instruction at this point in time. It is called a limiting instruction. So you can—you may consider the testimony you're about to hear for a limited purpose. And that limited purpose would be to go into the credibility or truthfulness of M.K. You may not consider it for any other purpose than that.

[¶54] While the first element of the plain error analysis is met, Appellant fails to satisfy the remaining elements. He says the limiting instruction was "confusing and prejudicial" because the jury "might well, given this

language, have used the prior consistent statement for proof of the matter asserted." We disagree, as his theory is contrary to the actual words of the instruction—it told the jury it was not permitted to use the testimony for any purpose other than the credibility or truthfulness of MK.

[¶55] Instructing the jury that it could consider the testimony only for credibility purposes and for no other purpose told it that it could not consider the testimony as proof of the matter asserted, i.e., the underlying statement that there had been previous sexual abuse. While additional verbiage might add precision, it was sufficiently clear that the testimony was not to be considered directly as proof of the matters asserted, that omission was not error.[6]

### Victim Impact Testimony

[¶56] Appellant asserts that victim impact testimony was introduced when the prosecutor asked Appellant on cross-examination "How do you think this has affected M.K.'s life." Because of this question, Appellant claims he was denied his substantial right to a fair trial on the merits. Again, Appellant's counsel did not object to this question, so our review is for plain error. *See supra* ¶ 52.

[¶57] The first element of the plain error analysis is met, as the record clearly reflects the alleged error. Again, however, Appellant has failed to satisfy the remaining elements. While at first blush the prosecutor's question to Appellant seems to come out of left field solely for the purpose of eliciting victim impact testimony, a deeper look into the record provides context. In the final moments of Appellant's direct testimony, his attorney asked him to describe how it felt to be accused of sexual abuse and how it had impacted his life.

[¶58] It was only after direct examination testimony which told the jury at length how

his life was impacted by the case that the prosecutor asked him a single question on cross examination: "How do you think this has affected M.K.'s life?" In sum, although the question may appear to have sought introduction of improper victim impact argument, given the context in which it was asked, it was not, and Appellant was not prejudiced.

### Prosecutorial Misconduct

[¶59] Lastly, Appellant asserts that in closing and rebuttal the prosecutor improperly attacked Appellant's own testimony from cross-examination while at the same time vouching for the credibility of the State's case. His counsel did not object to this supposed error, so our review is again for plain error. "The general rule in Wyoming is that a failure to interpose a timely objection to improper argument is treated as a waiver, unless the prosecutor's misconduct is so flagrant as to constitute plain error, requiring reversal." *Trujillo v. State*, 2002 WY 51, ¶ 4, 44 P.3d 22, 23-24 (Wyo. 2002). "We are reluctant to find plain error in closing arguments lest the trial court becomes required to control argument because opposing counsel does not object." *Id.* (quotation marks omitted). As part of our analysis of Appellant's claims of prosecutorial misconduct, we must consider the prosecutor's argument in the context in which it was made and with regard to the evidence produced at trial. *Id.* ¶ 5, 44 P.3d at 24.

[¶60] A prosecutor is afforded great latitude when he or she delivers closing arguments to the jury. *Watkins v. State*, 2016 WY 108, ¶ 14, 383 P.3d 1080, 1083 (Wyo. 2016). But there are boundaries that may not be traversed. We have oft consulted the ABA Standards for Criminal Justice for guidance:

(a) The prosecutor may argue all reasonable inferences from evidence in the rec-

---

**6.** In *Lancaster v. State*, the following instruction was given:

> Ladies and gentlemen of the jury, the videotape statement of Mr. Hanson, which you just viewed, is offered to you and should be considered by you only for the limited purposes of evaluating the credibility of the declarant, Mr. Hanson. It should not be considered by you for

any other purpose, and I'm specifically instructing you that it should not be considered directly as proof of the matters asserted within that tape.

2002 WY 45, ¶ 10, 43 P.3d 80, 87 (Wyo. 2002). This instruction would be preferable, but is not required.

ord. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence [of] the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Trujillo*, ¶ 5, 44 P.3d at 24-25; *Watkins*, ¶ 14, 383 P.3d at 1083.[7]

[¶61] Appellant points to bits and pieces of the prosecutor's argument concerning Appellant's testimony that he was impotent and therefore unable to commit the kind of sexual abuse with which he was charged. On cross-examination, the prosecutor asked if Appellant had ever told anyone that he was impotent, and Appellant replied that he previously told another prosecutor no longer with the district attorney's office. In closing, the prosecutor asked rhetorically, if that were true, "why did I have to ask the question." Appellant claims that this amounted to testimony by the prosecutor, and vouching.

[¶62] As we have already pointed out, a prosecutor has wide latitude in closing argument, so long as he does not express his personal belief or opinion as to the truth or falsity of any testimony or evidence of guilt. *Trujillo*, ¶ 5, 44 P.3d at 24-25. Although this statement raises concerns that the prosecutor weighed in on the evidence personally, we cannot say that it violated a clear and unequivocal rule of law and amounted to plain error. *See Carroll v. State*, 2015 WY 87, ¶ 35, 352 P.3d 251, 260 (Wyo. 2015).

[¶63] Overall, we have carefully reviewed the record and do not agree with Appellant that the events he complains of amount to error under the applicable standards of review. Accordingly, because Appellant has not established any underlying errors or any prejudice from them, his claim of cumulative error fails. *See McGill*, ¶ 22, 357 P.3d at 1148; *see also Teniente v. State*, 2007 WY 165, ¶ 97, 169 P.3d 512, 538 (Wyo. 2007).

[¶64] Affirmed.

---

7. These standards have been updated since *Trujillo* and *Watkins* were decided. However, the changes were not significant. *See ABA Standards for Criminal Justice* 3-6.8 (2015).